OPINION
{¶ 1} Appellants, mother Amy Richards and father Franklin Richardson appeal the June 3, 2003 Journal Entry of the Guernsey County Court of Common Pleas, Juvenile Division, which terminated their parental rights, responsibilities and obligations with respect to their two sons, Chad Richardson and Franklin Richardson, Jr., and granted permanent custody of the boys to appellee Guernsey County Children Services Board ("CSB").
 STATEMENT OF THE CASE AND FACTS {¶ 2} On September 19, 2001, the trial court issed an ex-parte order granting CSB custody of Franklin Richardson, Jr., and Chad Richardson. CSB filed a complaint on September 21, 2001, alleging the boys were neglected and/or dependent children. CSB requested a grant of temporary custody, or in the alternative, a disposition of protective supervision. CSB set forth a number of facts upon which it based its allegations. First, in October, 2000, CSB received an Order of Protective Supervision, and parents had not been compliant with the case plan relative thereto. Additionally, on September 17, 2001, CSB learned the boys had been residing with Stephanie Ford, their caregiver, since August 2, 2001.
 {¶ 3} Ford reported she had been providing twenty-four hour day care for both children and parents had failed to provide her with money, supplies, clothing, diapers, food and basic necessities for the children. According to Ford, parents visited the children for thirty to forty minutes every other day, and Ford often noticed the smell of alcohol emanating from father's person. During this period of caring for the children, Ford needed surgery. She asked parents to care for the children while she was in the hospital. Upon discharge from the hospital, Ford spent five days trying to locate the children. Parents had failed to provide Ford with an emergency contact number. The boys were not with parents when Ford found them. As of September 19, 2001, parents were homeless after being evicted. Parents had verbalized they were planning to flee to West Virginia with the children to avoid CSB involvement.
 {¶ 4} The matter came on for adjudicatory and dispositional hearing on December 18, 2001. At the hearing, parents admitted the allegations contained in the complaint. The trial court found the children to be dependent. The trial court ordered temporary custody of the children continue with CSB through January 14, 2002. The trial court also ordered CSB to continue protective supervision, and ordered parents to cooperate with CSB. Parents were granted temporary custody of the children, effective January 15, 2002.
 {¶ 5} On June 5, 2002, the trial court issued an Ex Parte Order of Custody of the boys to CSB. On June 6, 2002, CSB filed a Motion for Modification of Dispositional Orders, asking the trial court to modify the order of protective supervision to an order granting permanent custody to CSB. CSB cited recent incidents of mother committing self abuse and reporting fears of hurting the children if left alone with them, as well as father's aggressive tendencies, paranoid thinking, and discontinuation of treatment.
 {¶ 6} The guardian ad litem filed his written report on September 26, 2002. The guardian recommended the children be reunited with parents on the condition parents continue counseling and/or treatment. On September 30, 2002, the day of the scheduled permanent custody and annual review hearing, CSB withdrew its motion for permanent custody, and the trial court ordered such to be dismissed. The trial court approved an amended case plan on October 30, 2002. On February 27, 2003, CSB filed a Motion for Permanent Custody. The guardian ad litem filed an addendum to his report, again recommending the children be returned to parents. The trial court conducted a hearing on CSB's motion for permanent custody on May 13, 2003. Via Journal Entry filed June 3, 2003, the trial court terminated parents' parental rights, and granted custody of the children to CSB.
 {¶ 7} It is from this judgment entry parents appeal, raising the following assignments of error:
 {¶ 8} "I. THE TRIAL COURT ERRED IN APPLYING O.R.C. 2151.414(E)(11) TO BOTH APPELLANTS WHEN ONLY THE MOTHER HAD HER PARENTAL RIGHTS TERMINATED WITH RESPECT TO HALF-SIBLINGS OF THE MINOR CHILDREN HEREIN.
 {¶ 9} "II. THE TRIAL COURT'S FINDINGS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE; THE GUERNSEY COUNTY CHILDREN SERVICES BOARD FAILED TO SHOW BY CLEAR AND CONVINCING EVIDENCE THAT THE APPELLANT'S PARENTAL RIGHTS SHOULD BE TERMINATED.
 {¶ 10} "III. THE TRIAL COURT ERRED IN FINDING THAT THE PARENTAL RIGHTS OF THE APPELLANT/PARENTS SHOULD BE TERMINATED BECAUSE THE PARENTS FAILED TO COMPLY FULLY WITH THE TREATMENT PLAN AND MAKE ALL THE REGULARLY SCHEDULED VISITS."
 {¶ 11} This case comes to us on the accelerated calendar. App.R. 11.1, which governs accelerated calender cases, provides, in pertinent part:
 {¶ 12} A(E) Determination and judgment on appeal.
 {¶ 13} "The appeal will be determined as provided by App.R. 11.1. It shall be sufficient compliance with App.R. 12(A) for the statement of the reason for the court's decision as to each error to be in brief and conclusionary form.
 {¶ 14} "The decision may be by judgment entry in which case it will not be published in any form."
 {¶ 15} This appeal shall be considered in accordance with the aforementioned rule.
 I {¶ 16} In their first assignment of error, parents maintain the trial court erred in finding R.C. 2151.414(E)(11) applicable to father. Father explains the trial court imputed this factor to him and which was relative only to mother, and relied upon it as a reason for terminating father's parental rights. We disagree.
 {¶ 17} In its findings of fact, the trial court specifically found:
 {¶ 18} "7. The mother had her parental rights involuntarily terminated pursuant to Revised Code 2151.414 with respect to a sibling of the child.
 {¶ 19} "8. The parents live together as a family unit with the father not being found to be a stronger care giver than the mother."
 {¶ 20} The trial court concluded it was in the best interests of the children to grant permanent custody to CSB because of the children's need for a legally secure permanent placement, which could not be achieved without the grant of permanent custody, and:
 {¶ 21} "3. The parents have failed to utilize social and rehabilitative services, and material resources that were made available to the parents for the propose of changing parental conduct to allow them to resume and maintain parental duties; and
 {¶ 22} "4. The parents have demonstrated a lack of commitment toward the children by failing to visit with the children; and
 {¶ 23} "5. The mother has had parental rights involuntarily terminated pursuant to this order."
 {¶ 24} Our review of the trial court's June 3, 2003 Journal Entry reveals the trial court made specific findings as to mother and specific findings as to father. There is no record demonstration the trial court terminated father's parental rights based solely upon the fact mother's parental rights with respect to other children had been terminated.
 {¶ 25} Assignment of error one is overruled.
 II, III {¶ 26} Because parents' second and third assignments of error are interrelated, we shall address them together. Parents challenge the trial court's finding their parental rights should be terminated as being against the manifest weight of the evidence.
 {¶ 27} We are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (Feb. 10, 1982), Stark App. No. CA5758, unreported. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction (1978), 54 Ohio St.2d 279.
 {¶ 28} The relevant statute is R.C. 2151.414, which provides, in pertinent part: "(B)The court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:* * * (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999."
 {¶ 29} Pursuant to R.C. 2151.414(E), the trial court specifically found: "6. * * * the parents are unable or unwilling to provide nurturing and training required for their children through the available county social service agencies. 7. The mother had her parental rights involuntarily terminated pursuant to Revised Code 2151.414 with respect to [siblings] of the child[ren]. 8. The parents live together as a family unit with the father not being found to be a stronger care giver [sic] than the mother. 9. The parents have failed to comply fully with the treatment plan and have failed to attend their scheduled visits or to give reasonable notice of their inability to make their scheduled visits. * * * 11. The parents are unable to focus on more [than] one child at a time. 12. The parents are being treated for mental health disorders with the mother['s] being chronic and the father['s] being of limited ability to cope with the stress of the home and environment. 13. The parents are reluctant to seek medical help for their disorders. 14. The father has at various times allowed the children to suffer from the actions of the mother by abdicating his role as a father completely to the mother." June 3, 2003 Journal Entry at 11-12.
 {¶ 30} In determining the best interest of a child, R.C. 2151.414(D) states:"* * * the court shall consider all relevant factors, including, but not limited to, the following: * * * (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency."
 {¶ 31} Dr. Mark Goggin, the children's pediatrician, testified Franklin, who was approximately two-half years old shows developmental delays in the areas of cognitive, receptive language, expressive language, fine motor, social emotional and self-help. The doctor considered the language delays to be significant. Dr. Darrell Smith, mother's psychiatrist, testified mother has chronic mental health issues, and has been diagnosed Bi-Polar Mixed with borderline personality disorder. During his visits with mother, Smith observed large changes in her mood and behaviors, ranging from bright and cheerful to anxious, suspicious, and paranoid. Smith also reported treating father for anxiety. Despite Dr. Smith's treatment, mother continued to report, though less frequently, having seizures.
 {¶ 32} Misty Lucas, a representative from Help Me Grow, a developmental program, testified she attempted to make home visits between January and March, 2002, but was unable to do so due to parents' uncooperativeness. Lucas noted parents declined services for the children. Help Me Grow became involved with the family after an early intervention progress report made a referral for services. Since Franklin's removal from parents' home and involvement in the Help Me Grow program, the child had become very verbal and showed increase concentration. Help Me Grow requested an occupational therapy evaluation of Franklin, however, such evaluation was never completed because parents refused the services.
 {¶ 33} Elizabeth Coughenour, mother's counselor, testified she contacted the agency after mother became self-abusive, with one episode occurring in front of the children. Mother informed Coughenour two doctors had advised her not to be left alone with her children.
 {¶ 34} Sarah Darby, the on-going caseworker with CSB, testified parents had not followed their case plan. Specifically, parents had not signed any releases of information and had been inconsistent in their visitation with the children. In the three months prior to the hearing, parents attended approximately one-third of the scheduled visits. Parents often canceled the visits because they had scheduled other appointments for the same time.
 {¶ 35} With respect to parents' third assignment of error, parents assert a parent's failure to adhere to or complete a case plan is not, in and of itself, a ground for terminating parental rights. We agree. However, parents' situation went beyond failing "to comply fully with the treatment plan and make all regularly scheduled visits," as parents suggest are the reasons. Parents made little, if any, progress with dealing with their own mental health issues, refused services, missed visitations due to other commitments, and failed to take any responsibility for the children's removal from their home.
 {¶ 36} Parents' second and third assignments of error are overruled.
 {¶ 37} The judgment of the Guernsey County Court of Common Pleas, Juvenile Division is affirmed.
By: Hoffman, P.J., Farmer, J., and Boggins, J. concur.